CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

MAR 01 2013

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| WENDY R. TUCKER, ) | CASE NO. 5:11CV000137 |
| ) | |
| Plaintiff, ) | |
| v. ) | REPORT AND RECOMMENDATION |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | By: B. Waugh Crigler |
| Defendant. ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's February 13, 2008 protectively-filed application for a period of disability and disability insurance benefits under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416 and 423, is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING, in part, the plaintiff's motion for summary judgment, DENYING the Commissioner's motion for summary judgment, and REMANDING this case to the Commissioner for further proceedings.

In a decision dated December 30, 2009, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since August 1, 2007, her alleged date of disability onset, through the date of the decision.[1] (R. 18.) The Law Judge

---

[1] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last

determined plaintiff suffered medically determinable fibromyalgia, chronic fatigue syndrome, an affective disorder, an anxiety disorder, degenerative disc disease, and irritable bowel syndrome, all of which were severe impairments.[2] (R. 18.) She also concluded that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 18-20.) Further, the Law Judge found that plaintiff possessed the residual functional capacity ("RFC") to perform a range of sedentary work, with the limitations that she could only occasionally climb, bend, balance, stoop, kneel, crouch, or crawl; could not work around pulmonary irritants or hazardous machinery; could do no more than entry level or unskilled work; and could not work at a production pace. (R. 20-22.)

The Law Judge relied on portions of the testimony of Robert W. Lester, M.S., a vocational expert ("VE"), which were in response to questions premised on the Law Judge's RFC finding. (R. 22-23, 53-63.) Based on this testimony, the Law Judge determined that plaintiff was incapable of performing her past relevant work, but found there were jobs which existed in significant numbers in the local and national economy a person with plaintiff's limitations could perform, specifically as an addresser, adjuster/call out operator, or clerk/document preparer. (R. 22-23.) Accordingly, the Law Judge found that plaintiff was not disabled under the Act. (R. 23-24.)

Plaintiff appealed the Law Judge's December 30, 2009 decision to the Appeals Council and submitted additional evidence on administrative appeal. (R. 1-4, 10-11.) In its October 18,

---

for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A) (2004). In order to qualify for a period of disability and disability insurance benefits, plaintiff must establish that she became disabled prior to the expiration of her insured status, which is December 31, 2011. See 20 C.F.R. § 404.131(a); (R. 18, 127.) Substantial gainful activity is "work activity that involves doing significant physical or mental activities," and it is typically determined by the amount of a claimant's earnings. See 20 C.F.R. § 404.1574.

[2] A severe impairment is any impairment or combination of impairments which significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1520(c).

2

2011 Notice of Appeals Council Action, the Council found that the evidence offered on appeal did not provide a basis for changing the Law Judge's decision, determined there was no basis to review the Law Judge's decision, denied review, and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 1-4.) This action ensued, briefs were filed, and oral argument was held before the undersigned by telephone on February 4, 2013.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Id.* at 642. When the Appeals Council considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining whether the Law Judge's decision is supported by substantial evidence. *Meyers v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

In her brief in support of her motion for summary judgment, and in argument before the undersigned, plaintiff presented several challenges to the final decision of the Commissioner. First, plaintiff argued that the Appeals Council erred in finding that the new and material

3

evidence submitted while on administrative appeal to the Appeals Council did not provide a basis for changing the Law Judge's decision. (Dkt. No. 15, at 13-17.) Second, she contended that in determining her residual functional capacity, the Law Judge essentially substituted her own lay opinion for those of both the treating sources and state agency consultative examiners. *Id.* at 17-18. Third, she argued that the Law Judge's determination that that the opinions of David B. McDonald, M.D., and Darlene Saar-Graybeal, PAC, were only entitled to limited weight because she believed them to be inconsistent with the evidence of record is not supported by the substantial evidence. *Id.* at 18-24. Finally, plaintiff challenged the Law Judge's finding that her allegations concerning the intensity, persistence, and limiting effects of her maladies were not credible to the extent they conflicted with the Law Judge's RFC assessment is not supported by substantial evidence. *Id.* at 24-27.

Before the undersigned makes an effort to address each of these challenges, it is important to note that plaintiff takes the essential position that, in order for the Law Judge to have reached the conclusions she did on the weight of the medical evidence and the credibility of the lay testimony and other evidence, she either exercised an expertise she did not have or "cherry-picked" the evidence so as to engineer the result. This observation is particularly critical because, as plaintiff's counsel pointed out at the hearing, the Law Judge curtailed counsel's efforts to question the VE relating to limitations that went beyond the Law Judge's RFC assessment to assume that plaintiff's lay and medical evidence was given weight. (R. 60-62.) There is no question that the manner in which the Law Judge arrived at her determination of plaintiff's residual functional capacity and the tailoring of the vocational evidence inextricably led to her final conclusion that plaintiff was not disabled.

4

As stated, the Law Judge determined that, while plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent that they were inconsistent with her RFC assessment. (R. 21.) In making this determination, she found that plaintiff had received only conservative treatment with no surgery recommended, displayed minimal objective medical findings, had not always followed up with recommended treatment, and had been unwilling to decrease her use of narcotic pain medication despite recommendations from her treating physicians. (R. 21-22.) Additionally, the Law Judge relied a great deal on what she believed to be the vocationally relevant effects of plaintiff's daily activities. She found at step three of the sequential evaluation that plaintiff experienced only a mild restriction in activities of daily living, supporting that finding with the facts that plaintiff drove, went for walks, prepared food, attended a family vacation, assisted in moving her home, and fed her cat. (R. 19.) Furthermore, she determined that the opinions of plaintiff's treating physicians, which were substantially based on plaintiff's allegations, were inconsistent with what she found to be plaintiff's admitted daily activities. (R. 22.)

There is no question that the objective medical evidence in this record is rather minimal. Plaintiff's MRIs and X-rays have shown degenerative disc disease, but that was considered mild, with minimal degenerative changes. (R. 233-240, 248-249, 277-278, 340, 367-370, 469.) Plaintiff's physical examinations have also shown relatively normal findings. Physical examinations in April and June of 2006 showed some tenderness in plaintiff's shoulder's and spine but otherwise were normal, including normal strength in her extremities, normal gait, and relatively normal reflexes and sensations. (R. 227, 243.) A treatment note from January 2007 indicated a positive left straight leg raising test and back tenderness, and reports from July and

5

August 2007 disclosed moderate limitations in cervical range of motion and pain in flexion, extension, lateral bending, and rotation; and tenderness and trigger points in her back. (R. 261, 283.) However, the majority of reports from 2007 revealed generally normal findings, including normal strength, relatively normal reflexes, normal gait and movement, and negative straight leg tests, though several reports noted tenderness and trigger points in her back. (R. 263-265, 313, 336, 340-341.)

A report in February 2008 detailed that plaintiff's gait had become slow and slightly antalgic, with tenderness and decreased range of motion in her spine. (R. 332.) Physical examinations from May 2008 through January 2009 indicated that plaintiff had ongoing tenderness and muscle spasms in her spine, but showed that plaintiff was neurologically intact. (R. 489-504.) On January 7, 2009, a physical examination showed that plaintiff exhibited a normal gait and was alert and oriented, though it also noted that plaintiff had a positive straight leg raise on her right side. (R. 503.) Plaintiff's status on physical examination was described as "essentially unchanged" with no new focal neurological deficits from February through October 2009, though some tenderness in her spine was occasionally noted. (R. 507-544.) Additionally, reports from Loudoun Spine and Rehabilitation consistently note that plaintiff's pain medications were "well-tolerated, help with pain control, and improve her daily function." (R. 507-544.) Plaintiff has undergone continued pain management therapy at Loudoun Rehabilitation and the Center for Advanced Orthopedics and Pain Management, and she received several epidural injections and a radiofrequency facet rhizotomy. (R. 307, 309, 323, 325, 327.) However, the record is clear that she is not a candidate for surgical intervention, i.e. is not a candidate for more than conservative treatment. (R. 314.)

However, the Law Judge must consider more than the objective medical evidence in finding that a claimant is not disabled. It is clear in this circuit that, once it has been established that a claimant suffers from a condition or malady that could reasonably be expected to cause pain, "the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." *Hines v. Barnhart*, 453 F.3d 559, 564-565 (4th Cir. 2006). Here, plaintiff primarily has been diagnosed with and found by the Law Judge to suffer a diffuse pain condition compatible with severe fibromyalgia and severe chronic fatigue syndrome, maladies which cannot be measured through objective tests.[3] (R. 381.); *See Brosnahan v. Barnhart*, 336 F.3d 671, 672 fn1 (8th Cir. 2003); *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996); *Hawes v. Astrue*, No. 3:07CV00057, 2008 WL 4533925, at *5 fn 3 (W.D.Va. 2008); SSR 99-2p, 1999 WL 271569 (April 30, 1999); SSR 12-2p, 2012 WL 3104869 (July 25, 2012). Neither condition has a cure nor is there a surgical means of treatment, leaving only conservative treatment as an option, in the course of which plaintiff has been prescribed large amounts of narcotic pain medications and other pain management treatment, including epidural steroid injections. *Id.*; (R. 307, 309, 323, 325, 327, 489-544.)

As said, the Law Judge cited objective evidence concerning plaintiff's conservative treatment and relatively minimal MRI findings, neither of which is relevant to the severity of plaintiff's fibromyalgia and chronic fatigue disorder. Moreover, normal physical examination findings, which the Law Judge did not specifically consider in her report, are not unusual or highly relevant to diagnosing fibromyalgia or its severity, as fibromyalgia patients typically

---

[3] Fibromyalgia is defined as a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months. SSR 12-2p, 2012 WL 3104869, at *1-2 (July 25, 2012). Chronic Fatigue Syndrome is defined as a systemic disorder that is characterized in part by prolonged fatigue that lasts 6 months or more and results in substantial reduction in previous levels of occupational, educational, social, or personal activities. SSR 99-2p, 1999 WL 271569, at *1-2 (April 30, 1999).

7

manifest normal strength, neurological reactions, and range of motion. *See Preston v. Secretary of Health and Human Services*, 854 F.2d 815, 819-820 (6th Cir. 1988). Accordingly, based on the severe maladies the Law Judge found plaintiff to suffer, it was erroneous for the Law Judge have required plaintiff to produce objective evidence supporting the intensity, duration, and limiting effects of her conditions.

Here, however, the Law Judge also relied on plaintiff's daily activities and her perceived lack of compliance with the instructions of treatment providers to judge the weight of the evidence.[4] She cited plaintiff's daily activities of driving, reading, and household chores as evidence that plaintiff was not as limited as either she alleged or her treating physicians opined. (R. 21-22.) However, plaintiff need not be bedridden and completely incapacitated to demonstrate disability. See *Trotten v. Califano*, 624 F.2d 10, 11–12 (4th Cir. 1980). Moreover, the Law Judge appears to have engaged in "cherry-picking" of plaintiff's testimony and her other evidence regarding her daily activities. As the Law Judge found, plaintiff testified that she was constantly in severe pain and rarely was able to do more than one or two hours of activity a day, and doing any activity, especially for more than two hours, could greatly exacerbate her symptoms. (R. 20, 42-43, 175.) She also testified that she was completely incapacitated on bad days. (R. 20, 42-44, 174-175.) She testified that she rarely drove and often was unable to do so when suffering exhaustion and fibromyalgia flares. (R. 44-45, 182-183.) As for household chores, plaintiff testified that on good days she could use the computer from about 15 or 20 minutes to an hour to pay bills and tried to dust and wipe down counters. (R. 42, 181-183.) On great days, she stated that she would try to do more substantial chores, like laundry and making dinner, but that "I end up paying for it with more pain and fatigue for...several days after

---

[4] The Law Judge may consider all available evidence in determining whether plaintiff's claims regarding the intensity and persistence of her symptoms are credible. *See* 20 C.F.R. § 404.1529(c); S.S.R. 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

8

because I've helped out." (R. 42-43.) Furthermore, plaintiff testified that reading was an occasional daily activity, but one she could only perform within her hour or two of functioning on a good day. (R. 42.)

Plaintiff's sister corroborated plaintiff's testimony that her daily activities were quite limited.[5] (R. 153-161, 190-192.) She describes plaintiff's daily activities as very limited and not performed on a regular or sustained basis, stating that with the exception of bills, plaintiff's husband does nearly everything around the house. (R. 153-154, 156-157.) She stated that doing housework or yard work could result in the plaintiff being bedridden for days and that she only drives when it is absolutely necessary. (R. 156.) Moreover, she stated that, until struck by her maladies, plaintiff was a "very outgoing, energized, motivated, determined and healthy person," and that she had been "diligent and always took pride in a job well done." (R. 190-191.) However, she had noticed a "major deterioration in...[plaintiff's] ability to keep up with her work...," and that "her condition has not improved" since stopping work. (R. 191.) Plaintiff's former employer agreed with this account, stating that plaintiff did well as an Account Manager with no prior work performance infractions, but he noticed a steady decline in plaintiff's performance and functioning since 2006. (R. 163.) He described plaintiff as "unfocused and constantly tired" by the end and that she had been granted long term disability and her employment was terminated for health reasons. *Id.* The Law Judge identified no evidence that contradicted these accounts and, in the undersigned's view, none of this evidence is contradicted in the record. Accordingly, the undersigned is of the view that the Law Judge's determination that plaintiff's daily activities demonstrated an ability function at an RFC level that would allow

---

[5] As the Law Judge pointed out, plaintiff's sister indicated that plaintiff had gone a family vacation and helped her husband when they were moving to a new home. (R. 190-192.) However, neither of these activities was performed on even an occasional basis, and the sister's account matches plaintiff's description of her daily activities.

9

for an eight hour workday on a continual basis is not supported by the substantial evidence in this record.

The Law Judge also discredited plaintiff for what she found to be the lack of compliance with the recommendations and instructions of her treatment providers. Certainly, the Commissioner may consider gaps in the treatment record resulting from a claimant's failure to seek treatment or the lack of compliance with a treatment plan in considering the weight to be given the evidence. *See* 20 C.F.R. § 404.1529(c); S.S.R. 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Here, the Law Judge found that plaintiff had "not always followed up with recommended treatment. For example, she was repeatedly asked to schedule a psychological evaluation, to schedule an MRI, and asked to follow up with the rheumatology clinic at Johns' Hopkins." (R. 21.) Additionally, she found that plaintiff's doctors had warned her about the dangers of long term narcotic use and had encouraged her to decrease her pain medication intake, something plaintiff was unwilling to do. (R. 21.)

There certainly is evidence that plaintiff never acquired the necessary blood and lab work for a referral to the rheumatology clinic despite frequent requests by her treatment providers at Loudoun. (R. 502-503, 511, 513, 514, 517, 522, 525, 531, 535, 541.) Plaintiff also failed to obtain an MRI despite her doctor's instructions in May 2009. (R. 523, 527, 533, 535, 537, 541.) Also, plaintiff did begin seeing a psychiatrist and a counselor, though it was not for several months following her doctor's instructions. (R. 488, 489, 555, 617.) However, and without contraction, plaintiff testified that she had some problems regarding her insurance and that her "in coverage" doctors were located at some distance. Both of these provide a reasonable explanation for her difficulties in complying with her treatment plan given her difficulties with driving and finding transportation. (R. 40-42.) The Law Judge acknowledged this explanation

10

during the hearing and in her decision, but it is not clear how she took it into account. (R. 21, 42.)

It also is true that several of plaintiff's treatment providers have suggested that she decrease her use of narcotics or find alternate means of pain therapy. (R. 227, 265, 341, 518-519.) However, none of plaintiff's doctors actually instructed her to reduce her narcotic intake, none described her as narcotic seeking, and the same physicians continued to prescribe numerous medications to reduce plaintiff's pain. All of this is substantial support for plaintiff's subjective allegations of severe and disabling pain, as well as her continued use of prescribed drugs.[6]

Considering all these facts in combination, as none alone would carry the day for the plaintiff, the undersigned concludes that the Law Judge's underlying credibility finding, which in turn led to her RFC assessment, is not supported by substantial evidence. Specifically, she mischaracterized plaintiff's daily activities as being those indicative of gainful activity, and required objective evidence to support the claimed effects of maladies that, by their nature, produce no objective evidence, and was critical of conservative treatment where nothing else was shown to be appropriate, and considered plaintiff's use of pain medications as a negative factor where the doctors continued to prescribe them in large doses. Moreover, other than the Law Judge's own disbelief, there is little evidence in the record challenging plaintiff's credibility, and there is overwhelming reliable evidence supporting it. Plaintiff has consistently complained of severe pain and chronic fatigue, even while medicated, and her alleged limitations are supported by her family, former employer, and treatment providers.

---

[6] Commissioner's counsel contends that Dr. McDonald found that plaintiff's fibromyalgia was controlled. (Dkt. No. 17, at 7; R. 461.) However, the record in question, while difficult to decipher, appears to say that plaintiff's has "continued" fibromyalgia rather than "controlled." (R. 461.)

11

The Law Judge also gave little weight to the opinions of Dr. McDonald and Saar-Graybeal, plaintiff's treating sources.[7] The Law Judge found that neither opinion was consistent with the objective medical evidence of record and claimant's admitted daily activities, opining that Saar-Graybeal's opinion "appears to be based primarily on the claimant's allegations as opposed to medical findings." (R. 22.) This finding is built on a house of cards which the undersigned has determined cannot stand. As said, the Law Judge inappropriately characterized plaintiff's lack of objective medical evidence, conservative treatment, and daily activities in finding that she was not credible. This evidence is not inconsistent with plaintiff's alleged impairments or the opinions of plaintiff's treatment providers. Accordingly, for the same reasons as above, the undersigned finds that the Law Judge's decision to give only limited weight to the opinions of plaintiff's treatment providers is not supported by substantial evidence.

The undersigned now turns to the evidence plaintiff submitted while the case was on appeal to the Appeals Council. She contends that this evidence establishes good cause to remand her case to the Commissioner for further proceedings. Additional evidence filed for the first time before the Appeals Council is to be considered along with the rest of the record if it is new, material, and concerns the period of time before the Law Judge.[8] *Meyers v. Astrue*, 662 F.3d

---

[7] Plaintiff also argues that the Law Judge substituted her own lay opinion for opinions of treating sources and the state agency consultative examiner, A. John Kalil, Ph.D. (Dkt. No. 15, at 17.) She points out that the Law Judge found at step three of the sequential evaluation that plaintiff had mild restrictions in activities of daily living and maintaining social functioning and moderate difficulties in maintaining concentration and persistence of pace, despite the fact that Dr. Kalil opined that plaintiff had moderate restrictions in all three areas. *Id.* at 17-18; (R. 19, 437.) Ultimately, if the Law Judge erred here, it is harmless. Dr. Kalil's mental assessment indicates that plaintiff is capable of meeting the mental demands of a competitive work place on a sustained basis (R. 442.), and that plaintiff would not have been found disabled at step three if the Law Judge had found that she was moderately limited in all three categories. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04 (b), 12.06 (b).

[8] Commissioner's counsel argued that because plaintiff's additional evidence is not new because it was inexistence or available to plaintiff at the time of the hearing before the Law Judge. (Dkt. No. 17, at 14.) However, while a plaintiff must provide good cause for submitting

12

700, 704-707 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 95-96 (4th Cir. 1991). If these factors are met, the evidence will be reviewed by the court, along with the rest of the record, in determining whether there is substantial evidence supporting the Commissioner's final decision adopting that of the Law Judge. *Id.*

Much of the additional evidence is not new. The medical records in Exhibit 25F are duplicative of evidence before the Law Judge. (R. 483-544, 556-661.) The medical opinion of Dr. McDonald included in the material submitted to the Council is identical to that which was in the record before the Law Judge. (R. 381-387, 623-629.) However, the evidence of Carol E. Harkrader, M.D., plaintiff's treating psychiatrist, was new evidence, in that it was neither duplicative nor cumulative of any evidence that was before the Law Judge. (R. 617.) However, Dr. Harkrader's opinion evidence is not accompanied or supported by any records or examination findings. Moreover, it does not detail plaintiff's physical limitations or the severity of her diagnosed conditions. (R. 617.) Accordingly, it was not error for the Appeals Council to have determined that this evidence, which was submitted for the first time before it, failed to provide a basis for changing the Law Judge's decision. However, because the undersigned is recommending that the case be remanded, plaintiff should not be prejudiced from offering it, and any supporting records, in any proceedings hereafter conducted on remand.

So, too, the June 11, 2010 note of Michael Kuo, M.D., on a copy of Saar-Graybeal's December 2009 opinion. (R. 622.) Dr. Kuo was one of plaintiff's treating physicians with Loudoun Spine & Rehabilitation, and there was extensive medical evidence from him in the record before the Law Judge. Simply noting, "I agree with the above," at the end of Saar-Graybeal's opinion, Dr. Kuo's opinion falls a bit short of material evidence, providing no

---

evidence for the first time with the federal courts, this requirement does not exist for evidence that is submitted to the Appeals Council. *See Wilkins v. Secretary*, 953 F.2d 93, 95-96, fn 3 (4th Cir. 1991); 20 C.F.R. § 404.970.

13

independent findings from those of the existing opinion. Again, however, plaintiff should not be foreclosed from introducing all relevant evidence upon remand.

For all these reasons, it is RECOMMENDED that an Order enter GRANTING, in part, the plaintiff's motion for summary judgment, DENYING the Commissioner's motion for summary judgment, and REMANDING this case to the Commissioner for further proceedings.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/
U.S. Magistrate Judge

March 1, 2013
Date